Filed 11/26/14  McCoy v. Kazi Foods CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PENNY MCCOY et al., | B247475 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC461679) |
| KAZI FOODS, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mark V. Mooney, Judge.  Affirmed.

Rosen & Associates, Robert C. Rosen and John B. Wallace for Plaintiffs and Appellants.

Gareeb Law Group, Alexander S. Gareeb and Fadi K. Rasheed for Defendants and Respondents Kazi Foods, Inc. and Kazi Management VI, LLC.

Wilson, Elser, Moskowitz, Edelman & Dicker, Carey B. Moorehead, Laura P. Kelly, and Robert Cooper for Defendant and Respondent Zubair Kazi.

In this shareholder derivative action, plaintiffs and appellants Penny McCoy (McCoy) and Chandrashekhar Joshi (Joshi) (collectively, plaintiffs) appeal from the judgment dismissing their claims, brought on behalf of nominal defendant Cryobanks International, Inc. (Cryobanks) against defendants and respondents Zubair Kazi (Kazi), Kazi Foods, Inc. (KFI), and Kazi Management VI, LLC (KMVI) (collectively, defendants), after the trial court sustained, without leave to amend, defendants' demurrers to plaintiffs' third amended complaint. We affirm the judgment.

## BACKGROUND

**The parties**

Cryobanks, the nominal defendant in this action, is a Delaware corporation that collected, processed, and stored umbilical cord blood stem cells. It is no longer an operating company. Plaintiffs are shareholders of Cryobanks.

Kazi was on the board of directors of Cryobanks from 2001 until September 2008. He is also the managing member of KMVI and the sole shareholder of KFI.

**Procedural history**

Plaintiffs filed a total of four complaints in this action. They filed the original complaint on May 19, 2011, and a first amended complaint on December 7, 2011. A second amended complaint was filed on May 9, 2012, after defendants' demurrer to the first amended complaint was sustained with leave to amend.

### *Second amended complaint*

Plaintiffs' second amended complaint alleged 20 causes of action: (1) breach of written contract, (2) breach of implied contract, (3) breach of the covenant of good faith and fair dealing, (4) breach of fiduciary duties, (5) fraud, (6) fraudulent inducement, (7) suppression and concealment, (8) false promise, (9) fraudulent inducement to enter contract, (10) constructive fraud, (11), negligence, (12) negligent misrepresentation, (13) gross negligence, (14) violation of the Corporations Code, (15) unjust enrichment, (16) negligent interference with economic advantage, (17) declaratory relief, (18) unfair competition, (19) usurping corporate opportunity, and (20) misappropriation of trade secrets. Plaintiffs further alleged that it would have been futile for them to make a

2

demand on Cryobanks's board of directors to correct the alleged wrongdoing for various reasons, including the absence of any board of directors at the time the complaint was filed, Kazi was the sole director who controlled the board "[a]t all times mentioned in this Complaint," and "[p]ast Board members appointed by KAZI were primarily long term friends and business colleagues of KAZI."

Defendants filed demurrers and motions to strike, arguing that the second amended complaint failed to state sufficient facts to constitute a cause of action and failed to state sufficient facts to show that a demand on Cryobanks's board would have been futile. Defendants also filed a request for judicial notice of Cryobanks's April 28, 2011 annual report filed with the Florida Secretary of State showing that there were at least two board members at the time plaintiffs filed their original complaint.

The trial court granted the motions to strike, with leave to amend, on the ground that plaintiffs' allegations of demand futility were not sufficiently pled. The court noted that the sufficiency of plaintiffs' demand futility allegations had been challenged previously and pointed out the deficiencies that remained uncured in the second amended complaint: "[L]et me tell you some of the problems I have with it still, and that is, on the one hand plaintiffs say that, well, there was no board to make a demand to, on the other hand they say the board members were all friends of Mr. Kazi, so was there a board or not?"

The trial court then referred plaintiffs to the corporate documents that were the subject of defendants' request for judicial notice, noting that those documents showed the existence of a board of directors consisting of at least two members, and advised plaintiffs of the need to identify the specific board members: "[I]n order for the court to really be able to assess this futility argument, you've got to identify who the board members were, and if there were really only two at the time . . . that shouldn't be, you know, too hard to do." The trial court granted plaintiffs leave to amend and then gave them detailed guidance regarding the pleading deficiencies in each of the 20 causes of action asserted in the second amended complaint.

3

*Third amended complaint*

In their third amended complaint, the operative pleading in this appeal, plaintiffs elected to proceed with only three causes of action -- breach of written contract, breach of fiduciary duty, and unjust enrichment/restitution. Plaintiffs again alleged that any presuit demand on Cryobanks's board of directors would have been futile and claimed (1) they were excused from making such a demand because they had never been given notice of the identity of the directors because Kazi had unilaterally dispensed with corporate governance requirements, including providing notice of shareholder meetings to elect directors; (2) defendants were estopped from complaining about the absence of any demand because Cryobanks had in the past denied written requests by other shareholders seeking access to corporate books and records and would have denied any such request by plaintiffs; (3) Cyrobanks had no board of directors at the time the original complaint was filed; and (4) Kazi controlled and dominated Cryobanks's board by appointing his friends and business colleagues as directors.

Plaintiffs' breach of written contract cause of action is based on alleged breaches of stock purchase agreements governing purchases of Cryobanks stock by Kazi and KMVI and a conversion agreement governing KMVI's exercise of warrants for Cryobanks shares. Plaintiffs allege that each acquisition of Cryobanks stock by Kazi and KMVI was accompanied by a written contract, "generally titled Warrant Agreement, Stock Purchase Agreement and/or Loan Agreement."

Plaintiffs did not allege the dates of the stock purchase agreements, nor did they identify the parties to those agreements. Plaintiffs did not attach the stock purchase agreements to their third amended complaint, nor did they include the relevant terms of the stock purchase agreements in the complaint, but alleged that because they were not parties to the agreements, they "cannot quote each contract term or attach each of those Contracts." Plaintiffs nevertheless alleged that each of the stock purchase agreements contained a provision prohibiting Kazi and KMVI from selling their Cryobanks shares and that this prohibition was also "implied by law" into each of the agreements. They

4

claim that Kazi breached the agreements by transferring his shares to KMVI and that KMVI breached the agreements by selling those shares to others.

Plaintiffs further allege that KMVI and Cryobanks entered into a conversion agreement pursuant to which KMVI exercised warrants for 74 million shares of Cryobanks stock at a price of $.10 per share. Although the third amended complaint states that a copy of the conversion agreement is attached as an exhibit to the complaint, the record on appeal does not include a copy of the agreement. Plaintiffs allege that KMVI breached the conversion agreement by failing to pay Cyrobanks $7.4 million for the exercise of 74 million warrants.

In their breach of fiduciary duty cause of action, plaintiffs allege that certain defendants improperly sold their own shares of Cryobanks stock to third parties, thereby preventing Cryobanks from selling its shares directly to those same third parties; that Kazi engaged in self-dealing in the conversion agreement; and that Kazi prevented Cryobanks from obtaining other valuable financing opportunities.

Plaintiffs' unjust enrichment claim is based on the allegations that KMVI obtained 74 million shares of Cryobanks stock pursuant to the conversion agreement without paying for those shares.

In their third amended complaint, plaintiffs also allege that the statute of limitations had not run as to any of their claims because the applicable limitations periods were equitably tolled during a federal court action plaintiffs had pursued against defendants, the delayed discovery doctrine applied to toll the limitations periods, and defendants' fraudulent conduct and misrepresentations precluded them from asserting a statute of limitations defense.

Defendants demurred to the third amended complaint, arguing that plaintiffs' allegations of demand futility were insufficient, that the claims for breach of contract and breach of fiduciary duty were barred by the statute of limitations, and that plaintiffs had failed to state a claim for relief under any of the alleged causes of action. Defendants again asked the trial court to take judicial notice of the April 28, 2011 annual report

5

Cryobanks had filed with the Florida Secretary of State indicating that Cryobanks had at least two directors at the time plaintiffs commenced the instant action.

At a December 6, 2012 hearing, the trial court found plaintiffs' allegations of demand futility to be insufficient, stating: "I think when you were here last time I was pretty clear about, okay, make it crystal clear as to . . . whether there was a board, no board, why it was futile, if there is a board, who these board members are . . . . It still isn't any better. The complaint is still internally inconsistent and contradictory on this whole issue of . . . demand on the board." The trial court noted that plaintiffs had been accorded "plenty of opportunities to plead this" and sustained the demurrers without leave to amend.

A judgment of dismissal was entered on January 22, 2013. This appeal followed.

## DISCUSSION

### I. Standard of review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.) The legal sufficiency of the complaint is reviewed de novo. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790.)

## II. Demand futility

### A. *Applicable legal principles*

Under both Delaware and California law, a shareholder cannot initiate a derivative action without first informing the directors about the action and making an effort to induce them to commence the lawsuit themselves or to redress the alleged wrongs, unless such an effort would be futile. (Corp. Code, § 800, subd. (b); Del. Ct. of Chancery Rules, rule 23.1(a).)[1] Because Cryobanks is incorporated in Delaware, we apply Delaware law to determine whether plaintiffs sufficiently alleged, in the third amended complaint, the reasons why a demand on Cryobanks's board would have been futile. (*Charter Township of Clinton Police & Fire Retirement System v. Martin* (2013) 219 Cal.App.4th 924, 934.)

Under Delaware law, "directors are entitled to a *presumption* that they were faithful to their fiduciary duties. In the context of presuit demand, the burden is upon the plaintiff to overcome that presumption." (*Beam v. Stewart* (Del. 2004) 845 A.2d 1040, 1048-1049 (*Beam*).) To rebut that presumption, a plaintiff must plead with particularity facts establishing that it would have been futile to make a demand. (*In re Citigroup Inc.*

---

[1] Corporations Code section 800, subdivision (b) provides in relevant part: "No action may be instituted or maintained in right of any domestic or foreign corporation by any holder of shares . . . of the corporation unless . . . [t]he plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and alleges further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file."

Delaware Court of Chancery Rule 23.1 provides in pertinent part: "In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall allege that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort."

*S'holder Derivative Litig.* (Del. Ch. 2009) 964 A.2d 106, 120.) "The Court must determine whether a plaintiff has alleged particularized facts creating a reasonable doubt of a director's independence to rebut the presumption at the pleading stage. [Citation.]" (*Beam, supra*, at p. 1049.) Because director "[i]ndependence is a fact-specific determination made in the context of a particular case" the plaintiff must undertake a director by director analysis showing that there is a reasonable doubt that a majority of the board was incapable, either because of a material personal interest, or as the result of domination and control by another interested director, of objectively evaluating a demand. (See *Beam*, at pp. 1049-1051.)

The test of demand futility is a two-pronged one under Delaware law. (*Brehm v. Eisner* (Del. 2000) 746 A.2d 244, 256 (*Brehm*).) The first prong is "whether, under the particularized facts alleged, a reasonable doubt is created that . . . the directors are disinterested and independent." (*Aronson v. Lewis* (Del. 1984) 473A.2d 805, 814 (*Aronson*), overruled on another ground by *Brehm, supra*, 746 A.2d at p. 253 [holding that Court of Chancery decisions on demand futility are reviewed de novo and not reviewed under deferential abuse of discretion standard].) "The second prong is whether the pleading creates a reasonable doubt that 'the challenged transaction was otherwise the product of a valid exercise of business judgment.' [Citation.]" (*Brehm, supra*, 746 A.2d at p. 256.) If either prong is satisfied, then a plaintiff has met the demand futility requirement, and a demand on the board is excused. (*Ibid.*)

### B. Plaintiffs' allegations are insufficient

In their third amended complaint, plaintiffs make various conflicting allegations about the existence and composition of the Cryobanks board. They allege that Cryobanks had no board of directors, that Kazi was the sole board member, and that the board included other unidentified individuals who were friends and business colleagues of Kazi. Plaintiffs' allegation that Kazi was the sole member of Cryobanks's board of directors is contradicted by their allegation that Kazi resigned as a board member on September 8, 2008 -- long before they filed their initial complaint in this action.

Plaintiffs allege that after Kazi resigned as a Cryobanks director, he continued to control the board by causing his friends and business colleagues to be elected as board members. Plaintiffs further allege that these unidentified board members were not independent, but were loyal to Kazi. Plaintiffs fail, however, to identify any other director whose independence is in question, or to allege any facts that raise a reasonable doubt concerning that director's independence. "Allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence. [Citation.]" (*Beam, supra*, 845 A.2d at p. 1050.)

Plaintiffs claim that Cryobanks's failure to comply with corporate governance requirements such as sending notice of shareholder meetings for the election of directors prevented them from knowing the identity of any member of Cyrobanks's board of directors, or whether a board existed at all. They admit, however, that they never sought such information from Cryobanks because they never requested access to any corporate books or records. The trial court took judicial notice of a publicly filed document showing that Cryobanks had two directors, neither of whom was Kazi, at the time plaintiffs filed their initial complaint. Plaintiffs were aware of the existence and identity of these two directors before they filed their third amended complaint. The trial court had previously taken judicial notice of the same publicly filed document when defendants filed demurrers and motions to strike the second amended complaint and at that time admonished plaintiffs of the need to identify the individual directors. Plaintiffs nevertheless fail to identify any Cryobanks board member apart from Kazi. They also fail to allege any facts that would create a reasonable doubt about any director's independence. Plaintiffs accordingly fail to satisfy the first prong of the test for demand futility under Delaware law. (*Aronson, supra*, 473A.2d at p. 815.)

Plaintiffs' third amended complaint also fails to satisfy the second prong of the demand futility test, which requires allegations that create a reasonable doubt that the "challenged transaction was the product of a valid exercise of business judgment." (*Aronson, supra*, 473 A.2d at p. 815.) To satisfy this second prong, a plaintiff must plead

9

particularized facts that "raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." (*In re Walt Disney Co. Derivative Litig.* (Del. Ch. 2003) 825 A.2d 275, 286.) The directors are presumed to have acted on an informed basis and in the honest belief that the decisions were in the best interests of the corporation, and the burden is on the party challenging the decision to establish facts rebutting that presumption. (*Aronson, supra*, 473 A.2d at p. 812.) Demonstrating demand futility under this second prong has been described as a "heavy burden" for a shareholder plaintiff. (*White v. Panic* (Del. 2001) 783 A.2d 543, 551.)

Plaintiffs' demand futility allegations contain no facts whatsoever as to whether the directors were adequately informed or acted honestly and in good faith when making their decisions on the challenged transactions. The third amended complaint contains no allegations whatsoever concerning any individual director's decision regarding the stock purchase agreements pursuant to which Kazi and KMVI acquired Cryobanks shares, alleged offers from potential Cryobanks investors, or the conversion agreement. Although plaintiffs allege that Kazi "tricked" certain directors into resigning from the board shortly before Cryobanks entered into the conversion agreement "because KAZI did not want any Board member to oppose the Conversion Agreement," there are no allegations that the unidentified directors who remained on the board were not adequately informed or did not act in good faith when presented with the conversion agreement.

Because plaintiffs have failed to establish demand futility under either prong of the applicable test under Delaware law, the trial court did not err by sustaining defendants' demurrer on that basis.[2]

---

[2] Because we hold that plaintiffs' claims are barred as the result of their failure to establish that a prelawsuit demand on Cryobanks's board would have been futile, we need not address defendants' arguments that plaintiffs' claims are also barred by their failure to designate a reporter's transcript as part of the record on appeal and because they failed to allege facts stating a cause of action. (*Aubry v. Tri-City Hospital Dist., supra*, 2 Cal.4th at pp. 966-967 [judgment must be affirmed "'if any one of the several grounds of demurrer is well taken'"].)

10

### III. Plaintiffs' arguments regarding the second amended complaint

Plaintiffs claim the trial court erred by granting, without leave to amend, defendants' motions to strike various causes of action in the second amended complaint. The trial court did not deny plaintiffs leave to amend any of the causes of action asserted in the second amended complaint. Rather, the record shows that the trial court not only granted plaintiffs leave to amend, but also provided detailed guidance to correct the pleading deficiencies in each cause of action. When plaintiffs filed their third amended complaint, they chose to assert only three of the 20 causes of action they had asserted in the second amended complaint. Plaintiffs accordingly abandoned the remaining 17 causes of action and forfeited any claim of error with regard to those causes of action. (*Cochran v. Cochran* (1997) 56 Cal.App.4th 1115, 1119; see also *Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 861.)

### IV. Denial of leave to amend

Plaintiffs fail to suggest how they would amend their third amended complaint to correct the defects discussed above. The burden of proving a reasonable possibility of amending the complaint to state a cause of action "is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The trial court therefore did not abuse its discretion by sustaining the demurrer without leave to amend.

### DISPOSITION

The judgment is affirmed. Defendants are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
CHAVEZ

We concur:

_____, P. J.
BOREN

_____, J.
ASHMANN-GERST

11